```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

United States of America,    :    CRIMINAL ACTION
                             :    NO. 11-00464-1
     v.                      :
                             :
Matthew Kolodesh             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          September 4, 2020

## I.  Introduction

Matthew Kolodesh ("Defendant") moves for compassionate release in light of the COVID-19 pandemic. For the reasons that follow, the motion will be denied.

On October 17, 2013, Defendant was convicted of 1 count of conspiracy to commit Medicare fraud; 21 counts of health care fraud; 2 counts of mail fraud; and 11 counts of money laundering. See ECF No. 187. Defendant and his co-conspirators were architects of a multi-million dollar fraud scheme involving delivery of Medicare services to elderly patients.

Defendant is a 58-year-old male who suffers from atrial fibrillation (a form of heart disease), hypertension, hyperlipidemia (high cholesterol), depression and PTSD, gastroesophageal reflux disease, and obesity. Defendant has served 75 months of his 176-month sentence and is scheduled for release in November 2026.

## II. Legal Authority

Defendant seeks a reduction in sentence via early release to home confinement under 18 U.S.C. § 3582(c)(1)(A) (2018). While Defendant may seek (and in fact, has sought) home confinement from the Bureau of Prisons (BOP) under the CARES Act, he may not seek it from the Court under 18 U.S.C. § 3582(c)(1)(A). As the Government notes, and as this Court has stated before, the Court has no authority to designate Defendant to home confinement or review the BOP's designation decision. See 18 U.S.C. § 3621(b) (2018) (BOP's designation decision is not subject to judicial review); United States v. Torres, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020). However, the Government does not contest the Court's authority to review the instant motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, so the Court will move forward and rule on Defendant's motion for a reduction in sentence without considering home confinement as a suggested relief.

## III. Discussion

Following an inmate's exhaustion of administrative remedies within the Bureau of Prisons, a Court may "reduce [an inmate's] term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons

warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A); see <u>United States v. Rodriguez</u>, No. 03-271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020). Defendant has satisfied the statute's exhaustion requirements. <u>See</u> <u>United States v. Harris</u>, 812 F. App'x 106, 107 (3d Cir. 2020).[1] Thus, to prevail on his motion, the Court must (1) find both extraordinary and compelling reasons to warrant a reduction and (2) consider the applicable 3553(a) sentencing factors. <u>See</u> <u>United States v. Andrews</u>, No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020).

The statute does not define the terms "extraordinary and compelling." Although technically not applicable to this case,[2] prior to the enactment of the First Step Act, the Sentencing Commission had issued a policy statement identifying circumstances that constitute "extraordinary and compelling" reasons justifying compassionate release. <u>See</u> U.S.S.G. § 1B1.13

---

[1] The Third Circuit noted that an inmate can file a motion for compassionate release only after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." <u>Harris</u>, 812 F. App'x at 107 (quoting 18 U.S.C. § 3582(c)(1)(A)). In this case, on April 12, 2020, Defendant delivered to the BOP staff at FCI Fairton a request under the CARES Act for placement in home confinement. <u>See</u> ECF No. 272 at 1. Then, in a letter sent to the Warden on April 22, 2020, Defendant asked that his request also be considered a request for the Director of the BOP to file a motion for Defendant to receive a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). <u>See</u> ECF No. 272 at 1-2. The Warden did not respond to that request and more than 30 days passed since the request was delivered. <u>See</u> ECF No. 272 at 2.

[2] The policy statement preceded the enactment of the First Step Act and applies only to motions for compassionate release brought by the BOP. However, although not binding, the policy statement can inform the judgment of courts in determining whether compassionate release should be granted. <u>See</u> <u>Andrews</u>, 2020 WL 4812626, at *11.

cmt. n.1(A)-(D). As many courts have noted, the Sentencing Commission's policy statements "provide[] helpful guidance" when considering a motion for compassionate release. Rodriguez, 2020 WL 1627331, at *6, *11; see also Andrews, 2020 WL 4812626, at *5.

The policy statement lists "three specific examples" and also "provides a fourth 'catchall' provision." Rodriguez, 2020 WL 1627331, at *2. Relevant to this case is the specific example listed in Note 1(A), which provides that extraordinary and compelling reasons exist where a "defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility [extraordinary] and from which he or she is not expected to recover [compelling]." U.S.S.G. § 1B1.13 cmt. n.1(A). The Government concedes that due to Defendant's "history of heart disease, and obesity," ECF No. 280 at 17, Defendant's underlying health status falls within the scope of Note 1(A) of the policy statement.

The Court will assume, for purposes of this motion and without deciding, see United States v. Spivey, No. 10-00059-01, 2020 WL 3828600, at *2 (E.D. Pa. July 8, 2020), that Defendant's underlying health conditions, including heart disease and obesity [extraordinary], from which he is not expected to

recover [compelling], present sufficient reasons for compassionate release in light of the COVID-19 pandemic. Although this is a necessary part of the analysis, it is not sufficient.

Once the Court determines that there are extraordinary and compelling reasons for compassionate release, the Court must consider the relevant section 3553(a) sentencing factors. Since section 3553(a) "establishes factors to consider in initially imposing a sentence, not every factor applies here." Rodriguez, 2020 WL 1627331, at *11. The relevant factors here are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct; [and]
>     (C) to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a) (2018).

The first relevant factor is "the nature and circumstances of the offense and the history and characteristics of the defendant." Id. § 3553(a)(1). Here, the sentence was imposed as a result of Defendant's serious, long-running, and complex multi-million dollar fraudulent scheme. To wit, Defendant fraudulently billed Medicare for over $16 million dollars, at least part of which went to Defendant's wife, the sham CEO of

Home Care Hospice, Inc. (HCH) (the relevant fraudulent business), as salary and bonuses. See ECF No. 280 at 5 (citing PSR ¶ 50). HCH regularly enrolled patients who were not in need of hospice services and employees were instructed to falsify patient records to make it look as though patients were terminally ill. See ECF No. 280 at 3 (citing PSR ¶¶ 28-31).

The second applicable factor is the need for the imposed sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." See 18 U.S.C. § 3553(a)(2)(A). Defendant has only served 75 months, which is less than half of the original sentence imposed. Given the seriousness of the offenses of conviction, the Defendant's early release would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses.

The third relevant factor is the need for the imposed sentence to "afford adequate deterrence to criminal conduct." Id. § 3553(a)(2)(B). A lengthy sentence is necessary here. This is because in cases involving white collar crimes, such as this one, a sophisticated individual's understanding of the likelihood of apprehension and length of punishment is an important component of a putative offender's calculus on whether to commit the crimes. See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes

6

often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment."); see also United States v. Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring in part and dissenting in part) (noting that the ability of a white-collar criminal to foresee the upside of his crime "extends also to the possible downside of his fraud: apprehension, conviction, and *punishment. . . .* It is precisely at this point-when the thief of above-average education and wit is deciding whether to do the deed-that reflection on probable prison time-general deterrence-can have an effect").

The final applicable factor is the need for the imposed sentence to "protect the public from further crimes of the defendant." Id. § 3553(a)(2)(C). The Defendant's conduct at FCI Fairton demonstrates rehabilitation, with only one minor infraction for phone abuse. ECF No. 280 at 6. However, Defendant does not appear remorseful for these or any of his other criminal acts, as evidenced by his effort to persuade a witness to perjure himself, for which an enhancement for obstruction of justice was imposed at sentencing. See ECF No. 280 at 6. Defendant also attempted to hide his criminally derived funds from authorities and to blame his misconduct on others. See ECF No. 280 at 18. Given the sophistication of the crimes, and in light of Defendant's lack of remorse, the Defendant poses a risk

to the public (particularly the elderly and the sick) by virtue of his potential to begin new or renewed fraudulent schemes upon release.

Prior similar decisions of this Court and the Third Circuit are consistent with this Court's analysis. See, e.g., United States v. Pawlowski, 2020 WL 4281503 (3d Cir. June 26, 2020) (finding that defendant had extraordinary and compelling reasons for a reduction, but the district court did not abuse its discretion in concluding that release after serving 19 out of a 180-month sentence for public corruption is not warranted under the 3553(a) factors, and the district court properly relied on factors such as the limited time served and the seriousness of the crime), affirming United States v. Pawlowski, 2020 WL 2526523 (E.D. Pa. May 18, 2020); United States v. Shulick, 2020 WL 3250584 (E.D. Pa. June 16, 2020) (finding that regardless of the defendant's asthma, release was not warranted after only serving 19 out of a 60-month sentence for significant fraud); United States v. Tartaglione, 2020 WL 3969778 (E.D. Pa. July 14, 2020) (finding that release was not warranted after only serving two years of an 82-month sentence for committing a $2 million fraud against a public health clinic).

Thus, even considering evidence of Defendant's rehabilitation, his lack of criminal history, the absence of violence in connection with the crimes of conviction, and some

8

risk that he could contract Covid-19,[3] the Court finds that the section 3553(a) factors do not warrant compassionate release.

### IV. Conclusion

For the reasons set forth above, the Court will exercise its discretion and deny Defendant's motion. An appropriate order follows.

---

[3] Defendant is currently housed at FCI Fairton, where there have been at least 103 inmates infected with COVID-19 (out of 952 inmates) as well as eight staff member infections, but no reported deaths thus far. See Federal Bureau of Prisons, COVID-19 Cases (accessed August 26, 2020), https://www.bop.gov/coronavirus/; Federal Bureau of Prisons, FCI Fairton (accessed August 26, 2020), https://www.bop.gov/locations/institutions/fai/.